John A. McCAY, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 94–881.

United States Court of Veterans Appeals.

Nov. 1, 1995.

---

John A. McCay, pro se.

Mary Lou Keener, General Counsel, Atlanta, GA, Norman G. Cooper, Assistant General Counsel, Adrienne Koerber, Deputy Assistant General Counsel, and Vito A. Clementi, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Judges.

IVERS, Judge:

John A. McCay appeals from a September 27, 1994, Board of Veterans' Appeals (BVA or Board) decision which denied his claim for an earlier effective date for residuals of removal of dermatofibrosarcoma protuberance, keratitis of the left eye, and removal of the left tear duct. *John A. McCay*, BVA 94–___ (Sep. 27, 1994). The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). Both parties filed briefs. For the reasons set forth below, we reverse the decision of the BVA and remand the matter for payment of a retroactive award.

## I. FACTS

The appellant served in the United States Army from May 7, 1969, to October 19, 1970, with a tour of duty in the Republic of Vietnam. Record (R.) at 19. In December 1970, the appellant was treated for a skin infection of the left leg. R. at 33. The appellant applied for, and the regional office (RO) granted, service connection for skin infection of the left leg (no rating given). R. at 35.

In May 1990, the appellant applied for service connection for a soft tissue sarcoma "due to exposure to agent orange, skin condition." R. at 38. The appellant submitted medical evidence which indicated that in June 1987, he developed a large mass in his left cheek and eyelid, and was diagnosed with dermatofibrosarcoma protuberans, a soft tissue sarcoma. R. at 42. Dermatofibrosarcoma is a fibrosarcoma (tumor derived from fibroblasts that produce collagen) of the skin. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY

452, 629, 1485 (27th ed. 1988) [hereinafter DORLAND'S]. The physician noted that the appellant required surgery with

> extensive excision of the entirety of the soft tissue of his right cheek, medial nose, as well as the majority of his right lower eyelid and right upper lip with soft tissue reconstruction on June 17, 1987. Because of the amount of resection required for the treatment of this soft tissue sarcoma, the patient has been left with significant deformity and disability.

R. at 42. The appellant also had the majority of the left eyelid resected with reconstruction which left him unable to close his left eye completely. R. at 42.

The appellant underwent a VA rating examination in April 1991 which diagnosed him with dermatofibrosarcoma protuberance. R. at 65. In May 1991, the appellant was granted service connection for a dermatofibrosarcoma protuberance and defect of the left side (rated as 10% disabling), as of May 24, 1990, and skin infection of the left leg (rated 0% disabling) as of May 24, 1990. R. at 77. A physician's note dated June 1991, indicated that the appellant had keratitis of the left eye. R. at 83. Keratitis means inflammation of the cornea. DORLAND'S at 873. In July 1991, the RO granted service connection for keratitis of the left eye (rated as 10% disabling) from May 24, 1990, and increased the rating for dermatofibrosarcoma protuberance (rated as 30% disabling). R. at 92. The appellant filed a Notice of Disagreement (NOD) requesting an increased rating for his left leg skin condition, a separate rating for his eye condition because of the removal of the tear duct, and an earlier effective date for his ratings. R. at 94. A Statement of the Case (SOC) was issued. R. at 100. The appellant filed an appeal with the BVA. R. at 107. In May 1992, the BVA remanded the case for a physical examination. R. at 122–24.

A VA eye examination noted that the appellant had no keratitis, but a "deficient tear layer" and dry spots in each eye "indicating dry eye syndrome." R. at 128. The examiner also noted that the appellant had "intermittent lacrimation." R. at 128. The appellant also underwent orthopedic and dermatology examinations. R. at 129–34. The appellant reported that he was exposed to Agent Orange during his tour of duty as a medic in Vietnam. R. at 130, 133. The dermatology examiner noted "minimal findings" of urticarial papules, one on the left lower extremity and one on the calf region. R. at 133. Urticaria means a vascular reaction which is usually transient. DORLAND'S at 1796. A papule is a small superficial solid elevation of the skin. Id. at 1221. The examiner indicated that the appellant had some scaling and redness of the scalp which the appellant noted he had had for the last several years. R. at 134. The orthopedic examiner, Dr. J. Grossman, noted: (1) referral to the eye clinic; (2) referral to the dermatology report; (3) left hip strain with radiological follow-up; (4) left knee strain; (5) left arm scar from a childhood injury; (6) facial deformity secondary to cancer surgery; and (7) neuropsychiatric disorder secondary to military service manifested by social avoidance and sense of isolation and intrusive thoughts. R. at 132. Dr. Grossman referred the appellant to the Knoxville Combat Veterans Outreach Center for "additional medical professional treatment and care for his neuropsychiatric conditions and disorders." Id.

A Supplemental SOC was issued, and the RO reviewed the case. R. at 147. In August 1992 the RO increased the rating for dermatofibrosarcoma protuberance of the left cheek and subcutaneous defect of the left side of the face to 50% as of May 24, 1990; exposure of keratitis of the left eye 10% from May 24, 1990; removal of the left tear duct system (rated as 10% disabling) from May 24, 1990; skin infection of the left leg (rated as 0% disabling) from May 24, 1990. R. at 153. The appellant appealed this decision to the BVA, requesting an earlier effective date for entitlement to compensation for dermatofibrosarcoma protuberans of the left cheek with a subcutaneous defect; an earlier effective date of eligibility for the award of compensation for keratitis of the left eye; an earlier effective date for compensation for the removal of the left tear duct; and entitlement to an increased rating for a skin disorder of the left leg. R. at 158–60. In July

1993, the BVA denied the appellant's claim on all of the issues presented. The appellant filed an appeal with this Court, and the Secretary filed a motion for remand for failure to provide sufficient reasons and bases for the BVA decision, which the appellant did not oppose. R. at 171, 173–75. Specifically, the Secretary's motion for remand indicated that the BVA had failed to consider and discuss the applicability of 38 C.F.R. § 3.114(a), 38 U.S.C. § 5110(g), and several VA Office of General Counsel opinions pertaining to retroactive entitlement to VA benefits. R. at 176–77. On July 11, 1994, this Court granted the Secretary's motion and vacated the July 1993 BVA decision. R. at 172; *McCay v. Brown*, 7 Vet.App. 22 (1994). In September 1994, the BVA reviewed the appellant's record and denied earlier effective dates for compensation for dermatofibrosarcoma protuberance of the left cheek with a subcutaneous defect, for compensation for keratitis of the left eye, and for compensation for removal of the left tear duct system. *John A. McCay*, BVA 94–___ (Sep. 27, 1994). The Board did not discuss the issue of a skin disorder of the left leg, stating that because the appellant did not address it in his statement of issues on appeal to this Court from the July 1994 BVA decision, the Board considered that claim abandoned. *McCay*, BVA 94–___, at 2. The appellant has not raised the issue in the most recent appeal. The appellant filed a timely appeal with this Court appealing the Board's decisions on the issues addressed in its most recent opinion.

## II. ANALYSIS

### A. Relevant Provisions

■ The Court reviews the Board's findings of fact regarding new claims under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); *see also Proscelle v. Derwinski*, 2 Vet.App. 629, 631–32 (1992). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert*, 1 Vet.App. at 53. The Board must base its

decisions on "all evidence and material of record," 38 U.S.C. § 7104(a), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C. § 7104(d)(1). *See Douglas v. Derwinski*, 2 Vet.App. 435, 438–39 (1992) (en banc); *Gilbert*, 1 Vet.App. at 56–57.

■ In order to be eligible for benefits, a veteran must file "[a] specific claim in the form prescribed by the Secretary." 38 U.S.C. § 5101. Generally, the effective date of an award for compensation which is based on an original claim, a reopened claim, or a claim for increase, "shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. However, section 5110(g) provides an exception to section 5110(a):

> Subject to the provisions of section 5101 of this title, where compensation, dependency and indemnity compensation, or pension is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue. *In no event shall such award or increase be retroactive for more than one year from the date of application therefor or the date of administrative determination of entitlement, whichever is earlier.*

38 U.S.C. § 5110(g) (emphasis added). The relevant regulation states in pertinent part:

> (3) If a claim is reviewed at the request of the claimant more than 1 year after the effective date of the law or VA issue, benefits may be authorized for a period of 1 year prior to the date of receipt of such request.

38 C.F.R. § 3.114(a)(3).

### B. History of Relevant Provisions

Dermatofibrosarcoma protuberance is a form of soft tissue sarcoma. 38 C.F.R. § 3.309(e) (1994). The Veterans' Dioxin and Radiation Exposure Compensation Standards

Act, Pub.L. No. 98–542, 98 Stat. 2725 (Oct. 24, 1984) (found at 38 U.S.C. § 1154 note) [hereinafter 1984 Act] stated that soft tissue sarcoma is associated with exposure to certain levels of dioxin. 1984 Act, § 2(5). The Agent Orange Act of 1991, Pub.L. No. 102–4 (codified at 38 U.S.C. § 1116, as amended) [hereinafter 1991 Act], deleted language regarding certain diseases and disorders included in the 1984 Act. The 1991 Act deleted provisions of the 1984 Act which included diseases such as porphyria cutanea tarda, and provisions which authorized the Secretary of VA to establish a list of dioxin associated conditions and instead provided that the Secretary would cooperate with the National Academy of Sciences in reviewing medical evidence indicating which conditions are attributable to exposure to herbicide agents. *Id.* However, soft tissue sarcoma which manifested to a degree of 10% or more, "other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma," in a veteran who served on active duty in the Republic of Vietnam during the Vietnam era was not excluded. 38 U.S.C. § 1116(a)(1)(A) and (a)(2)(B).

The Secretary promulgated regulations at 38 C.F.R. § 3.311a, corresponding to both Acts, first issued on August 26, 1985. These regulations specifically stated that soft tissue sarcomas were not in the category of diseases associated with dioxin exposure because "sound scientific and medical evidence does not establish a cause and effect relationship between dioxin exposure" and soft tissue sarcomas. 38 C.F.R. § 3.311a(d)(2) (1991). On October 15, 1991, the Secretary amended his regulation to add as a presumed service-connected condition soft tissue sarcomas manifested anytime after service, based on exposure to herbicides containing dioxin, and the amendment was made effective retroactively to September 25, 1985. 38 C.F.R. § 3.311a(c)(2) (1992). The term soft tissue sarcoma was defined to include twenty different types of sarcomas. *Id.* On February 3, 1994, section 3.311a was deleted in its entirety and its text transferred to 38 C.F.R. § 3.309(e), which continued to include soft tissue sarcoma including dermatofibrosarcoma protuberance as a disease subject to presumptive service connection associated with exposure to certain herbicide agents, but made subject to the requirements of 38 C.F.R. § 3.307(a)(6) and (d). 38 C.F.R. § 3.309(e) (1994).

### C. Parties' Contentions

■ The appellant argues that, under the first clause of section 5110(g) of Title 38, U.S. Code, he should receive an effective date of June 1987. Appellant's Reply Brief (Br.) at 5. He argues that what the Secretary considers as the limiting second clause in section 5110(g) should be read to mean "the date as of which the administrative process ultimately determines a veteran became entitled to benefits." *Id.* The appellant also asserts that equitable tolling should be applied to grant him an earlier effective date. Appellant's Br. at 10–13.

The Secretary erroneously contends that the appellant's arguments for an earlier effective date are without merit because he did not submit an application for compensation until May 1990 and that the BVA decision is not clearly erroneous. Secretary's Br. at 5–9. The Secretary contends that "because Appellant had not been diagnosed with his disorder until 1987, he did not meet 'all the eligibility criteria for the liberalized benefit on the effective date' of the administrative issue." Secretary's Br. at 6.

The language of section 5110(g) and 38 C.F.R. § 3.114(a)(3) is applicable but was not properly applied by the BVA. Under the statute and the regulation, the appellant is entitled to receive an award of retroactive benefits with payment beginning on May 24, 1989, one year prior to the date of his May 1990 application for benefits. *Gold v. Brown,* 7 Vet.App. 315, 320 (1995) (veteran who did not file dependency allowance application until 12 years after he first met the criteria pursuant to a new law could only obtain allowance no earlier than one year prior to date of application); *Viglas v. Brown,* 7 Vet. App. 1 (1994) (section 5110(g) was clearly intended to limit maximum amount of recoverable retroactive benefits to one year prior to the filing of an application); *see also Lyman v. Brown,* 5 Vet.App. 194 (1993) (widow was not entitled to an earlier effective date under section 5110(g) because VA had no

duty to inform her of an amendment in the regulations that made her eligible for reinstatement of benefits). As to the appellant's claim for retroactive benefits to June 1987, the Court holds that the language of section 5110(g) and 38 C.F.R. § 3.114(a)(3) is explicit in precluding an award of retroactive benefits beyond the one-year period provided for in both the statute and the regulation. The language is equally explicit in requiring an award of benefits effective one year prior to the date of the appellant's application or the date of administrative determination of the entitlement, whichever is earlier. 38 U.S.C. § 5110(g). In this case, the date of application was May 1990, retroactive one year is May 1989, and the date of the administrative determination is May 1991. Because May 1989 is the earlier of the two dates, pursuant to 38 U.S.C. § 5110(g) and its accompanying regulation, the appellant is entitled to the most favorable date. 38 U.S.C. § 5110(g); 38 C.F.R. § 3.114(a)(3). Therefore, the Court concludes that the Board's denial of any and all retroactive benefits was error as a matter of law. *See Pernorio v. Derwinski*, 2 Vet.App. 625, 628 (1992) (Board committed legal error in using a standard that exceeded that found in the regulation); *cf. Hennessey v. Brown*, 7 Vet.App. 143 (1994); *Harder v. Brown*, 5 Vet.App. 183, 189 (1993).

### D. Equitable Relief

The appellant alternatively asserts in his pleadings that he should be eligible for an earlier effective date on equitable grounds because he relied on information provided to Congress and the public by VA that "no causal link [existed] between dioxin exposure and cancer." Appellant's Br. at 10. The Board, in the September 1994 decision, stated that it does not have jurisdiction over the appellant's argument for equitable relief, citing 38 U.S.C. §§ 503, 511, and 7104. *McCay*, BVA 94-___, at 7. The Secretary argues that the appellant's equity argument is "more appropriately addressed by recourse to the Secretary under 38 U.S.C. § 503." Secretary's Br. at 10. Section 503(a) of Title 38, U.S.Code is a permissive statute which gives the Secretary the authority to provide equitable relief when he determines that benefits administered by VA were not provided because of an administrative error. 38 U.S.C.

§ 503(a). This Court has held that authority to award equitable relief under section 503(a) is committed to the discretion of the Secretary, and that the BVA and this Court are without jurisdiction to review the Secretary's exercise of that discretion. *Suttmann v. Brown*, 5 Vet.App. 127, 138 (1993); *Darrow v. Derwinski*, 2 Vet.App. 303, 306 (1992).

### III. CONCLUSION

For the reasons stated above, the September 27, 1994, decision of the BVA is erroneous as a matter of law and is REVERSED. The matter is remanded for an award of benefits retroactive to May 24, 1989.