**Raymond S. DROSKY, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 96–573.**

United States Court of Veterans Appeals.

May 14, 1997.

James W. Stewart (non-attorney practitioner), was on the brief, for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Acting Deputy Assistant General Counsel; and John D. Lindsay, Jr., Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Vietnam-era veteran Raymond S. Drosky, appeals a February 7, 1996, Board of Veterans' Appeals (BVA or Board) decision denying (1) an increased rating for service-connected pericarditis, currently rated as 10% disabling; (2) an extension of a temporary total evaluation under 38 C.F.R. § 4.30 beyond July 31, 1992, for convalescence following surgery for treatment of service-connected pericarditis; and (3) an extraschedular rating under 38 C.F.R. 3.321(b). Record (R.) at 14, 16. The appellant seeks reversal of the Board's decision as to the denial of an increased rating for pericarditis; the Secretary seeks partial remand of the Board decision, in order to permit further development and readjudication as to that claim. In his brief, the appellant did not raise issue 2, and as to issue 3 stated specifically that he was not seeking an extraschedular rating. Reply Brief (Br.) at 5. The Court considers those issues to have been abandoned, and thus will not address them. *See McCay v. Brown*, 8 Vet.App. 378, 381 (1995), *aff'd*, 106 F.3d 1577 (Fed.Cir.1997); *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993). For the reasons that follow, the Court will reverse the Board finding that the criteria for a 30% rating for service-connected pericarditis have not been met.

## I. Background

The veteran served on active duty in the U.S. Air Force from April 1967 to January 1971. R. at 45. A January 1967 preinduction examination reported no relevant abnormalities. R. at 20–24. Service medical records included a December 1970 entry noting the veteran's complaints of chest pains after lifting heavy objects. R. at 39, 41.

Immediately following discharge, the veteran was treated in February 1971 by a private cardiologist for a heart condition diagnosed as recurrent pericarditis. R. at 51–52, 77. (Pericarditis is the inflammation of the pericardium; the pericardium is "the fibroserous sac that surrounds the heart and the roots of the great vessels, comprising an external layer of fibrous tissue ... and an inner serous layer.... ", DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (DORLAND'S) 1257, 1258 (28th ed.1994).) In July 1971, a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) decision granted the veteran's application for disability compensation for pericarditis and assigned a 10% rating. R. at 79, 102–03.

An April 1992 private medical record from Dr. Rao noted that the veteran had had chronic pericarditis since 1970, that a recent attack was not relieved with medication (Prednisone), and that he had pain in his right arm. R. at 117. The physician also noted that the veteran's heart was not enlarged, that there were no heart murmurs, that his electrocardiogram (EKG) was normal, and that there was no cardiomegaly. R. at 117, 129. (Cardiomegaly is hypertrophy of the heart; hypertrophy is "the enlargement or overgrowth of an organ or part due to an increase in size of its constituent cells", DORLAND'S at 268, 802.) An echocardiography report prepared at the time revealed "[p]ericadial thickening and calcification without evidence of pericardial effusion or restriction" and also revealed "evidence of irregular pericardial thickening and punctate pericardial calcification." R. at 120. That same month, the veteran sought a rating greater than 10% for his service-connected pericarditis, stating that he has had increased chest pains and noting that his cardiologist told him not to work. R. at 123.

He also requested that a temporary 100% rating be assigned in the event he was hospitalized for surgery relating to his condition. R. at 124, 133; *see* 38 C.F.R. § 4.30 (1996).

On May 28, 1992, the veteran underwent a pericardiectomy at a private hospital. R. at 136. (A pericardiectomy is the excision of the pericardium, DORLAND'S at 1257.) A report of chest x-rays, which had been taken after the operation, noted: "The heart size is at the upper limits of normal. There is moderate widening of the mid mediastinum, predominantly aorta." R. at 212. (The middle mediastinum is "the division of the mediastinum[, the mass of tissues and organs separating the two pleural sacs,] containing the heart enclosed in its pericardium, the ascending aorta, the superior vena cava, the bifurcation of the trachea into bronchi, the pulmonary arteries and veins, the phrenic nerves, a large portion of the root of the lungs, and the arch of the azygos vein," DORLAND'S at 998.) · The impression was "[n]o visible active disease." *Ibid.*

A November 1992 RO decision granted a temporary, total 100% rating for pericarditis due to post-hospitalization convalescence from May 28, 1992, through July 31, 1992, and restored the 10% rating, effective August 1, 1992. R. at 292–93. In January 1993, the veteran filed a Notice of Disagreement as to both claims, and thereafter perfected his appeal to the Board. R. at 295–96, 305. At a July 1993 hearing before the RO, he gave sworn testimony, relating symptoms of his service-connected condition and contending that he has an enlarged heart as a result of the surgery. R. at 310, 312. He related that "according to ... Dr. Sha[v]er any time you take the pericardium off the heart it has to enlarge because the restrictions from the pericardium is gone." *Ibid.* He stated that Dr. Shaver also had told him that his heart was enlarged. R. at 316.

The record on appeal contains three medical reports from his private physician, Dr. Shaver. A June 1992 medical report from Dr. Shaver noted:

Cardiac exam was essentially within normal limits. There was *no evidence of cardiomegaly*. The chest x-ray shows a *slight increase in the overall cardiac silhouette and prominence of the left atrial appendage*. On the lateral view there is just a little bit of tenting on the diaphragm and a little bit of blunting at the costophrenic angles.

R. at 322 (emphasis added). Dr. Shaver also noted that the veteran's EKG showed "normal sinus rhythm, and occasional ectopic beat" and that he was "doing very well." *Ibid.* In October 1992, Dr. Shaver reported that the veteran's physical examination included the following results:

He looked well. His BP [blood pressure] was 110–115/70–80. Carotids were of normal upstroke without bruits. The lungs were clear except for a slight decrease to the breath sounds at the left base. There was *no evidence of cardiac enlargement*. There was no evidence of pericardial rub. He had a soft ejection murmur.... The EKG was within normal limits. A PA chest x-ray shows *a suggestion of minimal cardiomegaly*. There *may be a bit of prominence of the left atrial appendage*. The costophrenic angles are clear. The lateral film is essentially within normal limits. [The veteran] has done extremely well. He is off his Prednisone. I've encouraged him to continue to be active....

R. at 323 (emphasis added). A July 1993 medical report from Dr. Shaver noted the following upon physical examination:

His cardiac exam was perfectly normal.... An EKG was entirely within normal limits. A PA and lateral chest x-ray of the chest *showed borderline cardiac enlargement* as one would expect following pericardiectomy. There also seemed to be a shadow at the upper waist to the heart with some residual calcium. There was no evidence of congestive heart failure. There was some prominence of the left atrial appendage as would be expected with a pericardiectomy.

R. at 324 (emphasis added).

In the February 7, 1996, BVA decision here on appeal, the Board, finding that the criteria for a 30% rating had not been met, denied, inter alia, the veteran's claim for a

rating greater than 10% for his service-connected pericarditis. R. at 7.

## II. Analysis

A claim for an increased rating is a new claim, not subject to the provisions of 38 U.S.C. §§ 5108 and 7104(b) prohibiting reopening of previously disallowed claims except upon new and material evidence. *See Proscelle v. Derwinski*, 2 Vet.App. 629, 631–32 (1992). A claim for an increased rating is generally well grounded when an appellant indicates that he has suffered an increase in disability. *Ibid.* In this case, the veteran sought a rating greater than 10% for service-connected pericarditis, stating that he has had increased chest pains and noting that his cardiologist told him not to work. R. at 123. Based on his statements that his disability has increased in severity, the Court holds that the veteran's claim is well grounded.

The Board found that the veteran was not entitled to a rating greater than his current 10% rating for pericarditis under 38 C.F.R. § 4.104, Diagnostic Code (DC) 7000 (1996), which is the DC that corresponds to rheumatic heart disease. Pursuant to DC 7002, pericarditis is rated as rheumatic heart disease. A 10% disability rating under DC 7000 is warranted for inactive rheumatic heart disease "[w]ith identifiable valvular lesion, slight, if any dyspnea, the heart not enlarged; following established active rheumatic heart disease." A 30% disability rating requires inactive rheumatic heart disease "[f]rom the termination of an established service episode of rheumatic fever, or its subsequent recurrence, with cardiac manifestations, during the episode or recurrence, for 3 years, *or* diastolic murmur with characteristic EKG manifestations *or definitely enlarged heart.*" 38 C.F.R. § 4.104, DC 7000 (emphasis added).

In the BVA decision here on appeal, the Board, in denying a rating greater than 10%, made the following findings with respect to Dr. Shaver's reports:

His EKG was within normal limits. Though his chest X-rays revealed *a minor prominence of the left atrial appendage and borderline cardiac enlargement*, Dr. Shaver remarked that such findings were to be expected following a pericardiectomy,

and did not indicate that they were significant, abnormal, or disabling, as he stated that the veteran was doing very well. Based on these findings, the Board concludes that the veteran's condition does not meet the criteria for a 30 percent disability evaluation, as a diastolic murmur with characteristic EKG manifestations, *with* a definitely enlarged heart attributable to active pericarditis[,] has not been demonstrated by the evidence.

R. at 13–14 (emphasis added).

The Secretary contends that this case should be remanded to the Board because it (1) committed error when it noted the presence of cardiac enlargement but then failed to "articulate sufficient reasons or bases [under 38 U.S.C. § 7104(d)(1)] for its determination that the record failed to demonstrate definite cardiac enlargement as required by the pertinent [DC] for the assignment of a 30[%] rating" (Secretary's Motion for Partial Remand (Mot.) at 4); (2) erred when, in applying the rating criteria, it "misstated the language set forth in [DC] 7000" and required that the veteran have "both diastolic murmur with EKG manifestations *and* a definitely enlarged heart to qualify for a 30[%] rating" (Mot. at 5 (emphasis in original)); and (3) failed to cite independent medical evidence in support of its conclusion that the minor prominence of the left atrial appendage and borderline cardiac enlargement did not constitute definite cardiac enlargement (Mot. at 6). In essence, the Secretary concedes the existence of clinical evidence of cardiac enlargement but contends that a VA medical examination is required to determine whether there was "definite" cardiac enlargement. Mot. at 7.

The appellant seeks reversal of the Board's finding that the conditions for a 30% rating have not been met. Br. at 11. He contends that Dr. Shaver's reports establish that the veteran's heart is enlarged and that he thus meets one of the three independent requirements for a 30% rating. Br. at 9–11. Additionally, he asserts that the Board erroneously considered factors "wholly outside the rating criteria provided by the regulations" when it denied a 30% rating. Br. at 11. He maintains that Dr. Shaver's medical

reports contain sufficient detail for rating purposes and that the Board did not find otherwise; that a finding of enlargement meets the 30% rating requirement for "definitely enlarged"; that there is no justification for another examination as proposed by the Secretary; and that a remand is thus not required here for further development or an adequate statement of reasons or bases. Reply Br. at 3–4. As discussed below, the Court agrees with the appellant.

### A. Application of DC Criteria

The Court concludes, as both parties agree, that the Board incorrectly applied the 30% rating criteria in this case. The Board's finding that the 30% criteria had not been met was based on its having applied rating requirements that exceeded in two respects those prescribed in the DC regulation. First, the Board erred in reading one of the requirements (a definitely enlarged heart) as conjunctive, rather than disjunctive as contemplated by the word "or" before "diastolic murmur" and before "definitely enlarged heart". 38 C.F.R. § 4.104, DC 7000. The use of the word "or" provides for an independent basis rather than an additional requirement. *See Zang v. Brown*, 8 Vet.App. 246, 252–53 (1995) (noting that regulation, as written in 38 C.F.R. § 3.354 using the term "or", "appear[ed] to provide for three independent instances of insanity"); *see also Johnson (Gary) v. Brown*, 7 Vet.App. 95, 97 (1994) (agreeing with memorandum by Secretary suggesting that criteria listed in 38 C.F.R. § 4.132, DC 9411, for 100% rating are each independent bases for granting such rating). The Court holds that it is clear from the face of the regulation that, as the Secretary concedes, a "veteran need only prove the existence of any one of those criteria to satisfy the requirement for a 30[%] evaluation." Mot. at 5–6.

Second, the Board found, in effect, that an enlarged heart is not sufficient to meet the 30% criteria of DC 7000 where such enlargement was "expected following a pericardiectomy"; where such enlargement is not "significant, abnormal, or disabling"; or where the enlargement exists but the veteran "was doing very well". R. at 13–14. The rating criteria require a definitely enlarged heart; they do not also require that the enlarged heart be unexpected, significant, abnormal, or disabling. The Board, in essence, impermissibly rewrote the DC 7000 criteria. "The Board's consideration of factors which are wholly outside the rating criteria provided by the regulation is error as a matter of law." *Massey v. Brown*, 7 Vet.App. 204, 208 (1994) (citing *Pernorio v. Derwinski*, 2 Vet.App. 625, 628 (1992)).

Accordingly, the Board's conclusions in this case were legally erroneous, and cannot stand, because they were based on criteria other than those specified in DC 7000. That is not the end of the matter, however.

### B. Reverse or Vacate

In the present case, it is undisputed that there is evidence that the veteran has an enlarged heart; the question before the Court is whether that evidence meets the criteria set forth in the DC that the enlarged heart be "definite" or whether the Court must remand for further development and an adequate statement of reasons or bases, as the Secretary contends. The crucial evidence of record consists of Dr. Shaver's June 1992, October 1992, and July 1993, cardiac examination reports. The June 1992 report noted, with some apparent inconsistency, that there was "no evidence of cardiomegaly" but "a slight increase in the overall cardiac silhouette and prominence of the left atrial appendage." R. at 322. The October 1992 report noted "no evidence of cardiac enlargement" but, also somewhat inconsistently, that there was "a suggestion of minimal cardiomegaly" and that there "may be a bit of prominence of the left atrial appendage". R. at 323. Finally, the most recent report, from July 1993, found "borderline cardiac enlargement as one would expect following pericardiectomy", and stated that "[t]here seemed to be a shadow at the upper waist to the heart with some residual calcium" and that there "was some prominence of the left atrial appendage as would be expected with a pericardiectomy". *Ibid.*

**1. Meaning of "definite".** In *Hood v. Brown*, the Court remanded a claim for an increased rating, greater than the assigned

30%, for manic-depressive psychosis in order for the Board to provide an adequate statement of reasons or bases under 38 U.S.C. § 7104(d)(1) explaining why the appellant's symptoms did not fit the criteria for a higher rating—that is, specifically, "why [the] appellant's impairment is 'definite' and not 'considerable,' 'severe,' or 'total,'" under 38 C.F.R. § 4.132. *Hood,* 4 Vet.App. 301, 302 (1993). The Court noted that the Board in *Hood* had "simply concluded that 'the current rating, which contemplates definite social and industrial impairment, is seen as adequately encompassing the symptomatology displayed.'" *Ibid.* The Court explained:

> The terms "total", "severe", "considerable", and "mild" [in 38 C.F.R. § 4.132, DC 9210,] are all quantitative in nature; they describe the degree [of impairment].... The term "definite", on the other hand, is qualitative in nature. To say that a veteran has "definite" impairment of social and industrial adaptability is to say that the veteran is unmistakably impaired. It does not describe the degree of the impairment as the other quantitative terms do. For example, a veteran who is "mildly" or "totally" impaired is also "definitely" impaired, because the characteristics which constitute a psychotic disorder are, without doubt, present.

*Id.* at 303. The Court noted that WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986) "defines 'definite' as 'real, actual' or 'marked by absence of the ... doubtful.'" *Ibid.* The Court noted the confusion in the DC criteria stemming from the use of quantitative terms for the 10% ("[m]ild impairment") and 50% ("[c]onsiderable impairment") ratings but a qualitative term for the 30% rating ("[d]efinite impairment"). In remanding the matter, the Court concluded that the Board was "free to construe the term 'definite' in [38 C.F.R. § ] 4.132 in a way that quantifies the degree of impairment and not the mere fact that impairment exists." *Id.* at 303–04; *see also Romeo v. Brown,* 5 Vet.App. 388, 396 (1993) (applying *Hood* and directing Board on remand to quantify veteran's degree of impairment resulting from service-connected post-traumatic stress disorder (PTSD), and not to refer to level of impairment as "defi-

nite" merely to indicate that such PTSD actually existed).

Unlike the DC 9210 criteria at issue in *Hood,* it is clear that the criteria identified in DC 7000 for meeting the 30%, 60%, and 100% ratings do *not* contain quantitative terms as to an enlarged heart; that is, all three ratings describe a heart that is "definitely enlarged". (The Court notes that under DC 7000 only the criteria for a 100% rating also require that the enlargement be "confirmed by roentgenogram and clinically".) There are no requirements that the enlargement be of a certain size or degree to qualify for a particular rating. The heart is either enlarged or it is "not enlarged", and the latter terminology is actually one of the criteria for a 10% rating under DC 7000. The lack of a quantitative term for the enlarged-heart 30% rating criterion in DC 7000 is made more clear when compared to the 60% rating criterion of "marked enlargement of the heart" in DC 7007 (hypertensive heart disease). 38 C.F.R. § 4.104, DC 7007 (1996). Accordingly, the Court holds that, however slight the enlargement might be, all that DC 7000 requires is some enlargement.

**■ 2. *Clear error in rating decision.*** A decision as to the severity of a disability is a factual determination. *See Gleicher v. Derwinski,* 2 Vet.App. 26 (1991). As to such factual determinations made by the BVA, this Court may not, of course, substitute its judgment for that of the BVA if there is a plausible basis for the decision. *See* 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 52 (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985) (citing *United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179–80, 94 L.Ed. 150 (1949))). Concomitantly, where there is only one permissible view of the evidence and the Board did not take that view, its finding must be reversed. *Cf. Gilbert, supra.*

**■** Because the decision as to the severity of a disability is a factual determination, the Court must decide whether, based on the

evidence of record, the BVA was clearly erroneous in not assigning a 30% schedular rating. That question turns on whether the evidence can plausibly support only one finding—that the veteran has an enlarged heart—in which case remand to the Board for it to make a finding on that question is not in order. A review of the record shows that the BVA's determination to deny a 30% rating was not supported by a plausible basis in the record.

In its decision, the Board focussed on the most recent medical report from Dr. Shaver, from June 1993, and stated: "Though his chest X-rays revealed a minor prominence of the left atrial appendage and borderline cardiac enlargement, Dr. Shaver remarked that such findings were to be expected following a pericardiectomy, and did not indicate that they were significant, abnormal, or disabling, as he stated that the veteran was doing very well." R. at 13–14. Although the Board did not use, as it should have, the DC term of "definitely enlarged heart" in its findings and discussion of this evidence, it is clear from the context of the BVA decision that in the above-quoted language (and especially, its use of the word "[t]hough", defined as "in spite of the fact", WEBSTER'S NEW WORLD DICTIONARY, THIRD COLLEGE EDITION 1393 (1988)) the Board found that a cardiac enlargement existed. Otherwise, the Board's tacking on of the unauthorized elements in addition to the requirement of an enlarged heart in order for a claimant to qualify for a 30% rating would make no sense. Certainly, the Board made no finding that Dr. Shaver's June 1993 report of a minor prominence of the left atrial appendage and borderline cardiac enlargement did *not* constitute definite cardiac enlargement. Indeed, that would have been a most questionable finding in view of the mandates of 38 U.S.C. § 5107(b) and 38 C.F.R. § 3.102 (1996) that the benefit of the doubt (reasonable doubt) on any material issue be resolved in a claimant's favor. Moreover, as noted above, the Secretary concedes that the veteran had cardiac enlargement: In his motion for remand, the Secretary states that "some cardiac enlargement was noted on at least three occasions following Appellant's surgery (R. at 322, 323, 324)". Mot. at 6. The Secretary also states: "Given the existence of clinical evidence of cardiac enlargement, proper adjudication of this issue required additional development ... to determine whether there was definite cardiac enlargement". Mot. at 7. The Court disagrees that such additional development is required here. As noted above, once there is clear evidence that current cardiac enlargement exists, the term "definite" has been satisfied and a 30% rating must be awarded. *See Hood, supra.*

Alternatively, even if it were to be concluded that the Board did not find that the veteran had an enlarged heart, reversal would nonetheless follow on this record. Although Dr. Shaver's June and October 1992 reports appear equivocal on the issue whether the veteran had an enlarged heart because of their apparent inconsistent statements, the most recent report, the June 1993 report, provides clear evidence that an enlarged heart exists. Based on this report, there is no plausible basis for a finding that an enlarged heart did not exist. And, as noted above, the Board did not so find.

### III. Conclusion

On the basis of the foregoing and consideration of the parties' pleadings and the record on appeal, the Court reverses the February 7, 1996, BVA decision that the criteria for a 30% rating under 38 C.F.R. § 4.104, DC 7000, for the veteran's service-connected pericarditis have not been met and remands the matter to the Board with a direction that it take action necessary for a 30% rating to be assigned and proceed expeditiously in accordance with section 302 of the Veterans' Benefits Improvement Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995).

REVERSED AND REMANDED.