Citation Nr: 1504677 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 10-45 938 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to a rating in excess of 10 percent for intervertebral disc syndrome (IVDS) of the lumbar spine prior to July 23, 2012.

2. Entitlement to a rating in excess of 20 percent for IVDS of the lumbar spine from July 23, 2012 to May 20, 2014.

3. Entitlement to a rating in excess of 40 percent for IVDS of the lumbar spine from May 21, 2014.

4. Entitlement to an initial rating in excess of 10 percent for left lower extremity neuropathy as secondary to service-connected IVDS of the lumbar spine.

5. Entitlement to a rating in excess of 20 percent for right lower extremity radiculopathy as secondary to service-connected IVDS of the lumbar spine.

6. Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU).

7. Entitlement to an extraschedular rating for service-connected IVDS of the lumbar spine, to include associated orthopedic and neurologic manifestations.


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse


ATTORNEY FOR THE BOARD

M. C. Wilson, Associate Counsel


INTRODUCTION

The Veteran served on active duty from December 1984 to September 1994.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from an April 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. The Veteran testified before the undersigned Veterans Law Judge (VLJ) at a videoconference hearing in July 2013.

These matters were previously before the Board in April 2014, at which time they were remanded for additional development. Pursuant to the remands' directives, the RO did the following: provided notice as to what evidence is necessary to substantiate a TDIU and VA's and the Veteran's duties in obtaining that evidence; notified the Veteran that he may submit lay statements in support of his claims; obtained records of his recent VA treatment; provided an examination to assess the severity of any orthopedic and neurologic impairment related to his low spine disability; and readjudicated the claim on appeal. Review of the record shows substantial compliance with the remand directives, and thus, no further action is necessary in this regard. Stegall v. West, 11 Vet. App. 268 (1998).

The Board notes that it specifically requested an opinion regarding the ameliorative effects of the Veteran's medication in its April 2014 request for an examiner's assessment of the severity of the Veteran's condition. See Jones v. Shinseki, 26 Vet. App. 56, 61-63 (2012) (the Board may not deny entitlement to an increased rating on the basis of relief provided by medication when those effects are specifically contemplated by the rating criteria). The Board finds, however, that it committed error in asking for the examiner's consideration of the ameliorative effects of the Veteran's medication, as this consideration is not explicitly mentioned in either the rating criteria under 38 C.F.R. § 4.71a or the general compensation regulations. Absent a clear statement setting out whether or how the Board should address the effects of medication, the Board erred in taking those effects into account when evaluating the Veteran's disability, rather than limiting itself to the symptoms expressly contemplated by 38 C.F.R. § 4.71a. See Massey v. Brown, 7 Vet. App. 204, 208 (1994) (holding that "[t]he Board's consideration of factors which are wholly outside the rating criteria provided by the regulations is error as a matter of law."); see also Drosky v. Brown, 10 Vet. App. 251, 255 (1997) (finding legal error where the Board "impermissibly rewrote" the regulation by considering factors wholly outside the rating criteria).

In addition, although the Veteran has not expressed disagreement with his rating for right lower extremity radiculopathy, the Board will address this issue below, as the schedular criteria for rating disabilities of the spine directs the Board to evaluate neurologic and orthopedic manifestations of the disability. See 38 C.F.R. § 4.71a (2014). As such, the issue of the Veteran's entitlement to a rating in excess of 20 percent for right lower extremity radiculopathy as secondary to service-connected IVDS of the lumbar spine is listed on the title page of this decision.

The issue of the Veteran's entitlement to an extraschedular rating for service-connected IVDS of the lumbar spine, to include associated orthopedic and neurologic manifestations, is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDINGS OF FACT

1. For the period on appeal prior to July 23, 2012, the Veteran's IVDS disability was productive of pain with a combined range of motion of the thoracolumbar spine of 220 degrees, but was not productive of ankylosis, forward flexion that was limited to less than 90 degrees, muscle spasm, guarding, or incapacitating episodes.

2. For the period from July 23, 2012 to May 20, 2014, the Veteran's IVDS disability was productive of pain with forward flexion to 45 degrees, but was not productive of ankylosis or incapacitating episodes.

3. For the period from May 21, 2014, the Veteran's IVDS disability has been productive of pain with forward flexion to 20 degrees, but has not been productive of ankylosis or incapacitating episodes.

4. The Veteran's left lower extremity neuropathy has not been productive of more than mild incomplete paralysis.

5. The Veteran's right lower extremity radiculopathy has not been productive of more than moderate incomplete paralysis.

6. The evidence fails to show that the Veteran's service-connected disabilities have precluded him from securing or following substantially gainful employment.


CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of 10 percent for IVDS are not met for the period on appeal prior to July 23, 2012. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes (DCs) 5003, 5242, 5243 (2014).

2. The criteria for a disability rating in excess of 20 percent for IVDS are not met for the period from July 23, 2012 to May 20, 2014. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.40, 4.45, 4.59, 4.71a, DCs 5003, 5242, 5243 (2014).

3. The criteria for a disability rating in excess of 40 percent for IVDS are not met for the period from May 21, 2014. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.40, 4.45, 4.59, 4.71a, DCs 5003, 5242, 5243 (2014).

4. The criteria for a disability rating in excess of 10 percent for left lower extremity neuropathy have not been met for the period on appeal. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.7, 4.123, 4.124, 4.124a, DCs 8520, 8620, 8720 (2014).

5. The Veteran is entitled to a rating of 20 percent for right lower extremity radiculopathy for the period from February 23, 2012. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.7, 4.123, 4.124, 4.124a, DCs 8520, 8620, 8720 (2014).

6. The criteria for a TDIU have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014).

Prior to the RO's initial unfavorable decision on the Veteran's claim for an increased rating for IVDS, VA provided proper notice of the information and evidence that is necessary to substantiate the Veteran's claim, that VA will seek to provide, and that the claimant is expected to provide by way of a February 2010 letter. See 38 C.F.R. § 3.159(b)(1); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Pursuant to VA's duty to assist in the development of a claim, VA associated with the Veteran's claims file his service treatment records (STRs) and VA treatment records. 38 U.S.C.A. § 5103A(c); 38 C.F.R. § 3.159(c)(3). Also pursuant to VA's duty to assist, VA provided examinations in March 2010, July 2012, and May 2014. 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159(c)(4). The Board finds that these examinations are adequate as the examiners reviewed the Veteran's relevant medical history, performed thorough clinical evaluations, and provided a clear picture of the Veteran's disabilities. See Nieves- Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007).

As acknowledged previously, the Veteran was afforded a hearing before the undersigned VLJ, during which the Veteran presented oral argument in support of his claims. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires that the RO Decision Review Officer or VLJ who chairs a hearing fulfill two duties: (1) the duty to fully explain the issues, and (2) the duty to suggest the submission of evidence that may have been overlooked.

During the hearing, the VLJ enumerated the issues on appeal and the Veteran's representative solicited information regarding the elements of the claims that were lacking to substantiate the Veteran's claims for benefits. Moreover, the Veteran has not asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2) nor has he identified any prejudice in the conduct of the Board hearing. By contrast, the hearing focused on the elements necessary to substantiate the claims and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claim for benefits. As such, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2) and that the Board can adjudicate the claims based on the current record.

The Board finds that no further notice or assistance to the Veteran is required for a fair adjudication of his claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). All necessary development has been accomplished and appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993).

II. Increased Rating for IVDS of the Lumbar Spine, to include associated Orthopedic and Neurologic Manifestations

By way of background, the RO granted service connection for degenerative changes of the thoracic spine and assigned a 10 percent rating, effective from September 18, 1994, in a September 1994 rating decision. The Veteran neither expressed disagreement with the September 1994 disability evaluation nor was any new and material evidence received by VA within one year of that rating decision. See 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 3.156(b), 20.201 (2014). As such, the September 1994 rating decision became final.

In May 2009, the Veteran submitted a claim for an increased rating. In the April 2010 rating decision that is the subject of the present appeal, the RO continued the Veteran's 10 percent rating for degenerative changes of the thoracic spine, which was recharacterized as IVDS of the lumbar spine. In a September 2012 rating decision, the Veteran's evaluation for IVDS was increased to 20 percent, effective from July 23, 2012. In an October 2014 rating decision, his evaluation was increased to 40 percent, effective from May 21, 2014.

In rating decisions dated April 2010 and November 2010, the RO granted service connection for left lower extremity neuropathy, as secondary to the Veteran's IVDS, and assigned a 10 percent rating, effective from May 26, 2009. In a September 2012 rating decision, the RO granted service connection for right lower extremity radiculopathy, as secondary to the Veteran's IVDS, and assigned a 20 percent rating, effective from April 6, 2012.

Disability ratings are determined by applying the rating criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule) and represent the average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2014). The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10 (2014).

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA compensation as well as the whole recorded history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2 (2014); see generally Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria for that rating. 38 C.F.R. § 4.7 (2014). Otherwise, the lower rating is assigned. Id. Additionally, while it is not expected that all cases will show all the findings specified, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21 (2014). The Board has considered whether separate ratings for different periods of time are warranted based on the facts, which is a practice of assigning ratings that is referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119, 126 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2008).

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 38 C.F.R. § 4.25. However, pyramiding, or evaluating the same manifestation of a disability under different DCs, is to be avoided. See 38 C.F.R. § 4.14 (2014). Thus, separate ratings under different DCs are only permitted if, for example, those separate ratings are assigned based on manifestations of the Veteran's disability that are separate and apart from manifestations for which the Veteran has already been rated. See Esteban v. Brown, 6 Vet. App. 259, 261 (1994). 

When evaluating joint disabilities rated on the basis of limitation of motion, VA must consider granting a higher rating in cases in which functional loss due to pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59 (2014); DeLuca v. Brown, 8 Vet. App. 202 (1995). Recently, the United States Court of Appeals for Veterans Claims (Court) clarified that although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011); cf. Powell v. West, 13 Vet. App. 31, 34 (1999); Hicks v. Brown, 8 Vet. App. 417, 421 (1995); Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1991).

Instead, the Mitchell Court explained that pursuant to 38 C.F.R. §§ 4.40 and 4.45, the possible manifestations of functional loss include decreased or abnormal excursion, strength, speed, coordination, or endurance, as well as less or more movement than is normal, weakened movement, excess fatigability, and pain on movement (as well as swelling, deformity, and atrophy) that affects stability, standing, and weight-bearing. See 38 C.F.R. §§ 4.40, 4.45. Thus, functional loss caused by pain must be rated at the same level as if the functional loss were caused by any of the other factors cited above. Thus, in evaluating the severity of a joint disability, VA must determine the overall functional impairment due to these factors.

The provisions of 38 C.F.R. § 4.59, which relate to painful motion, are not limited to arthritis and must be considered when raised by the claimant or when reasonably raised by the record. Burton v. Shinseki, 25 Vet. App. 1 (2011).

The criteria for rating all disabilities of the spine are set forth in 38 C.F.R. § 4.71a, which provides that spine disabilities are to be evaluated either under the General Rating Formula for Diseases and Injuries of the Spine (General Formula) or under the Formula for Rating IVDS Based on Incapacitating Episodes (IVDS Formula), whichever method results in the higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25. The schedular criteria for rating disabilities of the spine provides that separate neurologic and orthopedic manifestations of the disability are to be assigned ratings under the respective criteria, unless IVDS is based on incapacitating episodes.

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. 38 C.F.R. § 4.71a, General Formula, Note (2). The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. Id. The normal combined range of motion of the thoracolumbar spine is 240 degrees. Id.

The General Formula for rating a disability of the spine provides in pertinent part: with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease, a 100 percent evaluation is warranted for unfavorable ankylosis of the entire spine; a 50 percent evaluation is warranted for unfavorable ankylosis of the entire thoracolumbar spine; a 40 percent evaluation is warranted for forward flexion of the thoracolumbar spine to 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine; a 20 percent evaluation is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees, or the combined range of motion of the thoracolumbar spine is not greater than 120 degrees, or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis; and a 10 percent evaluation is warranted for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees, or combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees, or muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour, or vertebral body fracture with loss of 50 percent or more the height. 38 C.F.R. § 4.71a, General Formula.

Under the General Formula, associated neurologic abnormalities, including, but not limited to, bowel or bladder impairment, are evaluated separately under the appropriate DCs. Id. at Note (1).

The IVDS Formula provides in pertinent part: with incapacitating episodes having a total during of at least 6 weeks during the past 12 months, assignment of a 60 percent evaluation is warranted; with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months, assignment of a 40 percent evaluation is warranted; with incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months, assignment of a 20 percent evaluation is warranted; and with incapacitating episodes having a total duration of at least one week but less than 2 weeks during the past 12 months, assignment of a 10 percent evaluation is warranted. 38 C.F.R. § 4.71a, IVDS Formula.

For VA rating purposes, an incapacitating episode is a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. Id. at Note (1).

During the Veteran's March 2010 VA examination, the Veteran was diagnosed with IVDS of the lumbar spine involving the sciatic nerve and degenerative disc disease (DDD) of the thoracic spine. The Veteran reported that his lumbar spine disability was productive of daily, moderate left leg pain that originated in his low back. He also reported that he did not suffer from any stiffness or weakness, but experienced flare-ups, such as left sciatica symptoms, that were severe in nature and occurred once per week. He reported that these flare-ups affected his ability to stand at work where, at the time, his duties included selling cars on a show room floor. He denied having to use an ambulatory device and denied having the following symptoms due to his disability: weight loss, fevers, general feelings of illness, dizziness, visual disturbances, numbness, weakness, bladder issues, bowel issues, or erectile dysfunction.

Upon physical examination, the examiner noted that the Veteran's gait, posture, position of head, spinal curvature, symmetry in appearance, and symmetry and rhythm of spinal motion were normal. The Veteran demonstrated forward flexion to 90 degrees, extension to 10 degrees, left lateral flexion to 30 degrees, right lateral flexion to 30 degrees, left lateral rotation to 30 degrees, and right lateral rotation to 30 degrees. His range of motion did not change with repetitive use. Notably, the examiner indicated that pain and painful motion were present upon evaluation, but the examiner did not report that this pain further decreased the Veteran's range of motion.

The Veteran did not present with fatigue; weakness; lack of endurance; incoordination; muscle spasm; effusion; instability; tenderness; redness; heat; abnormal movement of the spine; or impairment of the motor function of the lower extremities, including neuritis, neuralgia, and paralysis. The examiner did note, however, that the Veteran demonstrated impairment of the sensory function of the left lower extremity, which was diagnosed as neuritis related to the sciatic nerve. The examiner reported that the Veteran did not have any incapacitating episodes during the previous 12 month period and did not experience bladder, bowel, or erectile dysfunction.

VA treatment records dated February 2012 through May 2012 document the Veteran's reports of low back pain that radiated to his right lower extremity and muscle spasms to the right. February 2012 records indicate that the Veteran's gait, station, coordination, spine alignment, and range of motion of the spine were normal at that time. These records also indicate that he did not experience weakness and did not present with any muscle atrophy, joint deformity, or subluxation.

In July 2012, the Veteran was afforded another VA examination to evaluate his spine disability. The examiner noted that the Veteran has flare-ups that affect the function of his back and occur upon engaging in increased physical activity. The examiner documented the following range of motion values: forward flexion to 50 degrees with objective evidence of painful motion at 45 degrees; extension to 30 or greater degrees with no objective evidence of painful motion; right lateral flexion to 30 or greater degrees with no objective evidence of painful motion; left lateral flexion to 30 or greater degrees with no objective evidence of painful motion; right lateral rotation to 30 or greater degrees with no objective evidence of painful motion; and left lateral rotation to 30 or greater degrees with no objective evidence of painful motion. These values did not change after repetitive use. 

The July 2012 examination report also documents tenderness to palpation, but the Veteran did not demonstrate guarding or muscle spasm and did not present with muscle atrophy or abnormal reflexes. Upon examination of the Veteran's sensory functioning, the examiner noted decreased sensation in the right leg, but noted that sensation in the left leg was normal. The examiner also noted that the Veteran's lumbar spine disability did not affect the Veteran's ability to work and that he did not have any incapacitating episodes over the previous 12 month period, did not have neurologic abnormalities, and did not use assistive devices at that time.

The July 2012 examination report includes important remarks concerning the Veteran's service-connected left lower extremity neuropathy. With regard to this disability, the examiner who conducted the July 2012 examination noted that the previous March 2010 VA examination revealed lumbar spine DDD and degenerative joint disease (DJD) with accompanying left leg radiculopathy, but disagreed with the diagnosis of a left lower extremity disability. In stating a contrary position, the July 2012 examiner asserted that the results of the July 2012 examination support the position that the lower extremity disability that is secondary to the Veteran's lumbar spine disability is localized to the right side, with right leg weakness and radiculopathy.

During a back conditions examination that was conducted in May 2014, the Veteran reported that flare-ups impact the function of his back. The examiner noted, however, that a flare-up was not present at the time of examination, and thus, an estimate regarding the degrees of additional range of motion loss due to pain, weakness, fatigability, or incoordination during a flare-up would be speculative. Range of motion testing revealed flexion to 60 degrees with objective evidence of painful motion at 20 degrees; extension to 25 degrees with objective evidence of painful motion at 15 degrees; right lateral flexion to 15 degrees with objective evidence of painful motion at 10 degrees; left lateral flexion to 15 degrees with objective evidence of painful motion at 10 degrees; right lateral rotation to 20 degrees with objective evidence of painful motion at 10 degrees; and left lateral rotation to 25 degrees with objective evidence of painful motion at 10 degrees. After repetitive use testing, the Veteran demonstrated the following: flexion to 25 degrees; extension to 20 degrees; right lateral flexion to 15 degrees; left lateral flexion to 20 degrees; right lateral rotation to 20 degrees; and left lateral rotation to 20 degrees. The Veteran was negative for ankylosis and incapacitating episodes of IVDS.

After reviewing all of the clinical evidence and subjective complaints, the Board finds that the record is negative for evidence of incapacitating episodes, and thus, the Veteran's lumbar spine disability must be evaluated under the General Formula.

Under the General Formula, the Veteran's disability does not approximate a rating higher than 10 percent before July 23, 2012 because the Veteran's disability was productive of no more than painful motion and a combined range of motion of the thoracolumbar spine of 220 degrees during that period. The Veteran demonstrated normal forward flexion, which is not compensable by VA standards, and his lumbar spine disability was not productive of ankylosis, muscle spasm, or guarding. Additionally, while VA treatment records indicate that the Veteran has had mild scoliosis since February 2008, there is no evidence that attributes the Veteran's scoliosis to muscle spasm or guarding, as is required in order to warrant a 20 percent rating.

For the period from July 23, 2012 to May 20, 2014, the evidence shows that the Veteran's lumbar spine disability was productive of pain and forward flexion to 45 degrees, but not ankylosis. Accordingly, a rating in excess of 20 percent is not warranted for this period.

For the period from May 21, 2014, the Board notes that the Veteran has demonstrated flexion to only 20 degrees. See May 2014 VA "back (thoracolumbar spine) conditions" Report. The evidence fails to show, however, that the Veteran has experienced ankylosis during this period. Thus, a rating in excess of 40 percent is not warranted for the period from May 21, 2014.

Additionally, the Board finds that because the Veteran has had a compensable rating for his lumbar spine disability for the entire period on appeal, the Veteran has been compensated appropriately for his painful motion and an additional rating is neither warranted under 38 C.F.R. § 4.59 and 38 C.F.R. § 4.71a, DC 5003 nor is it permitted under 38 C.F.R. § 4.14. See Burton v. Shinseki, 25 Vet. App. 1 (2011).

As previously noted, the General Formula also directs the Board to evaluate any associated objective neurological abnormalities separately under an appropriate DC. See 38 C.F.R. § 4.71a, Note (1).

The Board finds that the record is negative for findings of bowel or bladder problems. Although the Veteran testified during his July 2013 hearing that he has experienced erectile dysfunction, the Board finds that this dysfunction is not related to the Veteran's service-connected lumbar spine disability. The report of a May 2014 VA examination of the Veteran's reproductive system indicates that the Veteran has nonservice-connected hypogonadism and it is as likely as not that his erectile dysfunction is attributable to this nonservice-connected condition. Further, the examiner opined that his erectile dysfunction is likely than not proximately due to or caused by his lumbar spine disability. Thus, the Board finds that the record is negative for competent evidence that demonstrates that the Veteran's erectile dysfunction is attributable to a service-connected disability.

With regard to the issue of an increased initial rating for left lower extremity neuropathy, the Board finds that this disability has not approximated an evaluation in excess of 10 percent disabling for any period on appeal. Under the applicable rating criteria, a 10 percent rating is warranted for neuralgia of the sciatic nerve that is productive of mild incomplete paralysis. See 38 C.F.R. § 4.124a, DC 8720 (2014). In order to warrant a higher rating, the evidence must show a higher level or degree of paralysis, which is not shown by the record.

First, the March 2010 examination report documents neuritis of the left lower extremity, but fails to show that any associated paralysis was more than mild in degree and there is no evidence of atrophy. Second, June 2011 VA treatment records document the Veteran's report of left foot pain, but the reporting clinician indicated that his pain was likely due to obesity. Third, the July 2012 examination report indicates that the Veteran did not present with motor or sensory impairment of the left side during his examination. In addition, a May 2014 examination report indicates that the Veteran has only demonstrated mild constant pain, intermittent pain, and numbness in the left lower extremity, and the examiner opined that the neurologic manifestations of the Veteran's IVDS are minimal in severity. Accordingly, the Board finds that a disability rating in excess of 10 percent for left lower extremity neuropathy is not warranted.

As stated previously, the RO granted service connection for right lower extremity radiculopathy and assigned a 20 percent rating, effective from April 6, 2012, by way of a September 2012 rating decision. Notably, the RO granted service connection for this disability because VA treatment records dated April 2012 document the Veteran's report of radiating pain into the right lower extremity, May 2012 records document a diagnosis of right lower extremity radiculopathy, and the July 2012 examination report documents a current diagnosis of moderate right lower radiculopathy related to his service-connected IVDS.

Review of the record reveals that the Veteran's right lower extremity radiculopathy was first noted in a February 23, 2012 VA treatment record that documents the Veteran's report of low back pain that radiated to his right lower extremity-pain that has been evaluated as no more than moderately disabling. The Board notes here that the July 2012 examination report indicates that the Veteran did not have constant pain in his right lower extremity and only demonstrated moderate intermittent pain, paresthesias and/or dysesthesias, and numbness. Overall, the July 2012 examiner endorsed that the Veteran's right leg radiculopathy is moderate in severity. Notably, a May 2014 VA examination report indicates that the Veteran did not have constant pain, intermittent pain, paresthesisas and/or dysesthesisas, and numbness. Accordingly, the Board finds that more than moderate radiculopathy has not been shown. The Veteran is therefore entitled to a 20 percent rating for right lower extremity radiculopathy, effective from February 23, 2012. See 38 C.F.R. § 4.124a, DC 8520 (2014).

For the foregoing reasons, the Board finds that the evidence fails to show that higher ratings are warranted for the Veteran's IVDS or left lower extremity neuropathy for any period on appeal, but the Veteran is entitled to a rating of 20 percent for right lower extremity radiculopathy for the period from February 23, 2012. There is no reasonable doubt to be resolved in this case. 38 U.S.C.A. § 5107(b) (2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

III. Entitlement to a TDIU

Generally, a veteran is eligible for TDIU if he is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities" and meets certain schedular criteria. 38 C.F.R. § 4.16(a) (2014). However, it is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16(b). Further, marginal employment, defined as an amount of earned annual income that does not exceed the poverty threshold determined by the United States Department of Commerce, Bureau of the Census shall not be considered substantially gainful employment. 38 C.F.R. § 4.16(a); see also Faust v. West, 13 Vet. App. 342, 355-56 (2000).

Here, the Veteran has reported that his service-connected disabilities have affected his ability to work and a VA examiner made a similar report in a May 2014 examination report. Notwithstanding these reports, the evidence shows that the Veteran is employed at a car dealership and has been employed throughout the pendency of the present appeal. Additionally, in a May 2014 letter, VA requested that the Veteran provide additional evidence in support of his claim for a TDIU by submitting VA Form 21-8940 (Veterans Application for Increased Compensation Based on Unemployability). To date, the Veteran has not submitted this form to support his claim. See 38 U.S.C.A. § 5107(a) ("Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary."). The Board finds therefore that there is no evidence of record that indicates that the Veteran's employment was or is currently marginal. Thus, there is no entitlement under the law to the benefit sought, and the claim for a TDIU must be denied as a matter of law.



ORDER

A disability rating in excess of 10 percent for IVDS is denied for the period on appeal prior to July 23, 2012. 

A disability rating in excess of 20 percent for IVDS is denied for the period from July 23, 2012 to May 20, 2014. 

A disability rating in excess of 40 percent for IVDS is denied for the period from May 21, 2014.

An initial disability rating in excess of 10 percent for left lower extremity neuropathy is denied.

Subject to the applicable regulations concerning the payment of monetary benefits, a rating of 20 percent for right lower extremity radiculopathy is granted from February 23, 2012.

A total disability rating based on individual unemployability due to service-connected disabilities is denied.


REMAND

In exceptional circumstances, where the schedular evaluations are found to be inadequate, 38 C.F.R. § 3.321(b)(1) provides that a veteran may be awarded a rating higher than that encompassed by the schedular criteria. Under the regulation, an extraschedular disability rating is warranted upon a finding that "the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." If exceptional circumstances are found, the matter must be referred to the Under Secretary for Benefits or the Director of the Compensation Service for consideration of assignment of an extraschedular evaluation. See id.

Here, a VA examiner commented in May 2014 that the Veteran's service-connected disabilities have affected his ability to work, but opined that the Veteran is capable of sedentary work. Thus, the Board finds that a remand is warranted so that the Under Secretary for Benefits or the Director of the Compensation Service may consider in the first instance whether the Veteran is entitled to an extraschedular rating for his IVDS disability, alone, or whether he is entitled to an extraschedular rating with regard to the combined effect of all of his service-connected disabilities. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014).

Accordingly, the case is REMANDED for the following action:

1. Notify the Veteran that he may submit lay statements from himself and from other individuals who have first-hand knowledge and/or were contemporaneously informed of the impact of his service-connected disabilities, alone or in the aggregate, on his ability to work. The Veteran should be provided an appropriate amount of time to submit this lay evidence.

2. Thereafter, consider whether to forward the case to the Under Secretary for Benefits or the Director of the Compensation Service for consideration of the assignment of an extraschedular rating with respect to the Veteran's service-connected disabilities.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 

 (CONTINUED ON NEXT PAGE)

action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



____________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs